UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

LOUIS G. FEY, JR., ET AL. PLAINTIFFS

V. CIVIL ACTION NO. 3:25-CV-379-DPJ-LGI

STARR INDEMNITY & LIABILITY COMPANY, ET AL. DEFENDANTS

ORDER

This civil-conspiracy case is before the Court on four motions to dismiss [95, 108, 112, and 115] and Plaintiffs' motion for jurisdictional discovery [121]. For the reasons explained below, the Court denies Defendant Matt Strothoff's Motion to Dismiss [108], grants the other motions to dismiss based on lack of personal jurisdiction [95, 112, 115], and denies in part the motion for jurisdictional discovery [121] as it relates to personal jurisdiction.[1]

I. Introduction

Plaintiffs Louis G. Fey, Jr. and Fey Consulting, LLC (Fey Consulting) assert federal and state-law claims against Defendants for Fey's termination from Arthur J. Gallagher Risk Management Services, LLC (AJG). *See* Am. Compl. [56] at 7–12. While employed with AJG, Fey also worked as an expert witness through Fey Consulting. *Id.* ¶ 21. In that capacity, he testified against Defendant Starr in *Starr Indemnity & Liability Insurance v. Parker*, No. 3:23-CV-215-CWR-LGI (S.D. Miss.) (*Starr I*). Am. Compl. [56] ¶ 12. On May 2, 2025, the day after Fey's testimony, the jury returned a "multi-million verdict against Starr." *Id.* ¶ 14.

[1] The Court is still considering the motion for discovery as it relates to Article III standing and the motion to dismiss by Defendant Starr Indemnity & Liability Insurance Co. ("Star") [110].

Following the verdict, Plaintiffs allege that "Starr orchestrated the termination of [Fey] . . . in retaliation for his testimony." *Id.* ¶ 17. On May 13, 2025, Defendant Dave Fitzgerald—Global Chief Claims Officer at Starr—allegedly met with employees at Gallagher Bassett Services, Inc. (GBS). *Id.* ¶ 18. During this "strategy session," Fitzgerald "voiced his displeasure" and expressed an "intent . . . to exact retribution against Mr. Fey." *Id.* After this meeting concluded, GBS's CEO Defendant Mike Hessling contacted Fitzgerald to discuss Fey's testimony. *Id.* On that same day, Fitzgerald emailed Hessling, remarking on the "lowlights of Mr. Fey's testimony." Fitzgerald Email [56-1] at 1; *see also* Am. Compl. [56] ¶ 19.

Fey says that at some point he was "told that Starr had contacted AJG through Gallagher Bassett, a related entity, and that AJG would be demanding that Mr. Fey immediately cease operation of Fey Consulting." Am. Compl. [56] ¶ 21. That warning materialized on May 21, 2025, when Fey received an email from Defendant Matt Strothoff, GBS's general counsel, stating that Fey Consulting was a "direct violation" of Fey's employment agreement, company policy, and AJG's business interests. Strothoff Email [56-2] at 2; *see also* Am. Compl. [56] ¶ 22. Strothoff told Fey he would be terminated if he did not close Fey Consulting, Fey refused, and his employment was terminated on May 23, 2025. *Id.*

Fey sued that same day and then amended his complaint on December 30, 2025. In response, Defendants filed five motions seeking dismissal on jurisdictional and non-jurisdictional grounds. *See* Fitzgerald Mot. [95]; Strothoff Mot. [108]; Starr Mot. [110]; Hessling Mot. [112]; GBS Mot. [115]. All motions are fully briefed; this order addresses all but Starr's motion [110].

II. Motions to Dismiss for Lack of Personal Jurisdiction [95, 112, 115]

Defendants Fitzgerald, Hessling, and GBS all seek dismissal under Rules 12(b)(1), (2), and (6), claiming Plaintiffs lack subject-matter and personal jurisdiction and otherwise fail to state a claim. Jurisdictional issues must be considered first. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999). And because the personal-jurisdiction issue is relatively "straightforward" and "present[s] no complex question of state law," the Court will begin and end there. *Id.* at 588; *see also Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 213 (5th Cir. 2000) (noting circumstances when lower courts may consider personal jurisdiction before subject-matter jurisdiction).

A. Standard

"When a nonresident defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the defendant." *Mink v. AAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). If, as here, the "district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)).

For that analysis, the Court accepts a plaintiff's "uncontroverted allegations" as true and resolves any factual conflicts in the plaintiff's favor. *Alpine View*, 205 F.3d at 215. In doing so, the Court "may consider the contents of the record before the court at the time of the motion, including 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'" *Quick Techs., Inc.*, 313 F.3d at 344 (quoting *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985)).

Finally, "[t]he prima-facie-case requirement does not require the court to credit conclusory allegations." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001). Nor may the plaintiff rely on the allegations in a complaint that are "contradicted by affidavits." *Wyatt v. Kaplan*, 686 F.2d 276, 283 n.13 (5th Cir. 1982) (holding that plaintiff failed to make *prima facie* case when defendant presented uncontradicted affidavits).

B. Analysis

"Absent a federal statute that provides for more expansive personal jurisdiction, the personal jurisdiction of a federal district court is coterminous with that of a court of general jurisdiction of the state in which the district court sits." *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 418 (5th Cir. 2001) (citing Fed. R. Civ. P. 4(k)(1)). Here, no federal statute expands personal jurisdiction, so the parties agree that Plaintiffs must meet two requirements. "First, the nonresident defendant[s] must be amenable to service of process under [the] State's long-arm statute[, and] [s]econd, the assertion of in personam jurisdiction must be consistent with the 14th Amendment's Due Process Clause." *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999) (internal citation omitted).

Here, Plaintiffs have attempted to satisfy the Mississippi's long-arm statute's tort prong. That prong provides:

> Any nonresident person . . . who shall commit a tort in whole or in part in this state against a resident or nonresident of this state . . . shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-3-57.

The Mississippi Supreme Court has held that "for purposes of our long-arm statute, a tort is committed in Mississippi when the injury results in this State . . . because an injury is

necessary to complete a tort." *Horne v. Mobile Area Water & Sewer Sys.*, 897 So. 2d 972, 977 (Miss. 2004) (citing *Sorrells v. R & R Custom Coach Works, Inc.*, 636 So. 2d 668, 672 (Miss. 1994)). "In determining where the injury occurred for jurisdictional purposes, actual injury must be distinguished from its resultant consequences, such as pain and suffering, economic effects or other collateral consequences that often stem from the actual injury." *Jobe v. ATR Mktg., Inc.*, 87 F.3d 751, 753 (5th Cir. 1996).

Thus, "consequences stemming from the actual tort injury do not confer personal jurisdiction at the site or sites where such consequences happen to occur." *Id.* (citing, among other cases, *Estate of Portnoy v. Cessna Aircraft Co.*, 730 F.2d 286, 290 (5th Cir. 1984) (holding under Mississippi's long-arm statute that a tort occurs when and where actual injury or accident takes place, not where economic consequences occur)). For example, in *Pace v. Cirrus Design Corp.*, the injuries occurred in the state where the accident happened, not the state where the plaintiff later endured pain and suffering. 93 F.4th 879, 896 (5th Cir. 2024). The Mississippi Supreme Court has "quoted and endorsed" the *Pace* reasoning. *See Dunn v. Yager*, 58 So. 3d 1171, 1184 (Miss. 2011).

Fey's injuries occurred in Louisiana. *After* Fey testified in Mississippi, Defendants allegedly conspired to "illegal[ly] retaliate[e] against [him] by terminating his employment from AJG on May 23, 2025." Am. Compl. [56] ¶ 24. But for the alleged conspiracy, Plaintiffs say "Mr. Fey would still be an employee of AJG," in Louisiana. *Id.* ¶ 30. As Fey states in another brief, "[t]he entire thrust of the operative complaint alleges Mr. Strothoff, Mr. Hessling, Mr. Fitzgerald, Starr, and Gallagher Bassett intentionally destroyed Mr. Fey's *employment* in retaliation for his testimony in *Starr I*. There is simply no other way to read the operative complaint." Pls.' Mem. [130] at 17 (emphasis added). In short, the termination is the injury for

which Plaintiffs seek damages, and it occurred in Louisiana where Fey resided and the employment relationship existed.

Plaintiffs nevertheless say an injury occurred in Mississippi because the testimony occurred here. *See* Pls.' Mem. [118] at 8. As they put it, "because Mr. Fey testified in this [Mississippi Court], any retaliation against him for so testifying necessarily injures him here." Pls.' Mem. [118] at 8. Plaintiffs cite no relevant authority for this argument, and it is not compelling.

For starters, Plaintiffs' argument seems most relevant to the conspiracy claim under 42 U.S.C. § 1985(2). That statute makes it unlawful for "two or more persons . . . [to] conspire . . . to injure . . . [a] witness *in his person or property* on account of his having . . . testified." 42 U.S.C. § 1985(2) (emphasis added). "The gist of the wrong at which § 1985(2) is directed . . . [is the] intimidation or retaliation against witnesses in federal-court proceedings. The terms 'injured in his person or property' define the harm that the victim may suffer as a result of the conspiracy to intimidate or retaliate." *Haddle v. Garrison*, 525 U.S. 121, 125 (1998). Thus, there must be some injury to Fey's "person or property." *Id.* Such injury includes the loss of employment. *Id.* at 126.

Plaintiffs have identified only one injury to person or property, Fey's termination from employment. *See* Pls.' Mem. [130] at 17. But again, that occurred in Louisiana, and Plaintiffs have not identified any other injuries to person or property in Mississippi. While the motive for the termination may have happened here, the injury was in Louisiana.

The state-law causes of action also assert injuries in Louisiana. *See* Am. Compl. ¶ 52 (alleging Defendants "tortiously interfered with the business relationship existing between AJG and Mr. Fey," i.e., his employment in Louisiana); *id.* ¶ 58 (alleging "Defendants tortiously

interfered with Fey Consulting's business relationships and expectancies *by causing Mr. Fey's termination from AJG*") (emphasis added); *id.* ¶¶ 61–68 (alleging that Defendants' previously described acts caused emotional distress); *id.* ¶ 70 (alleging civil conspiracy "to retaliate against Mr. Fey for testifying against Starr in a federal proceeding by causing the destruction of his employment with AJG, and to cause damage to Mr. Fey and to Fey Consulting").

In sum, the federal proceeding Fey testified in may have been in Mississippi, but he was terminated from his job in Louisiana where he also ran Fey Consulting. Because the *injury* itself occurred outside of Mississippi, the Court finds that Plaintiffs are barred from relying on the tort prong of the Mississippi long-arm statute to establish personal jurisdiction over Defendants Fitzgerald, Hessling, or GBS. Given this finding, there is no need to address due process or Defendants' Rule 12(b)(6) arguments. Defendants' motions [95, 112, 115] are granted.

III. Motion for Discovery [121]

Given Defendants' jurisdictional defenses, Plaintiffs filed a motion for limited jurisdictional discovery.

A. Standards

"The district court . . . has broad discretion in all discovery matters," including requests for jurisdictional discovery. *Wyatt*, 686 F.2d at 283. "[D]iscovery on matters of personal jurisdiction . . . need not be permitted unless the motion to dismiss raises issues of fact. When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Id.* at 284 (internal citation omitted).

Before a Court grants a plaintiff's discovery request on personal jurisdiction, the plaintiff must make a '"preliminary showing of jurisdiction' by 'presenting factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts.'" *M. W.*

*Prince Hall Grand Lodge, Free & Accepted Masons of La., Inc. v. Anderson*, No. 24-30517, 2025 WL 1576802, at *6 (5th Cir. June 4, 2025) (cleaned up) (quoting *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005)).

So, to obtain jurisdictional discovery, the plaintiff "must show that it is 'likely to produce the facts needed to withstand' dismissal." *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 326 (5th Cir. 2021) (quoting *Davila v. United States*, 713 F.3d 248, 264 (5th Cir. 2013)). And "[h]e must make clear which specific facts he expects discovery to find." *Id.* (citation and quotation marks omitted).

B. Analysis

Plaintiffs' motion for discovery never mentions the need for discovery to address personal jurisdiction. It instead explains that discovery is required because "Defendants argue that Plaintiffs lack Article III standing." Pls.' Mot. [21] at 1.

Their opening memorandum also discusses nothing but standing-related discovery. Specifically, they seek to address Defendants' argument that no standing exists because the "injuries are not 'fairly traceable' to the wrongful conduct alleged." Pls.' Mem. [122] at 2. The relief Plaintiffs seek tracks that basis: (1) in camera review of communications protected by the attorney-client privilege related to "Article III standing" and (2) production of Defendant Mike Hessling's communications covered by the attorney-client privilege. *Id.* at 1. "[I]f those communications do not settle the issue," Plaintiffs alternatively seek an evidentiary hearing, which they believe would "shed light on whether [Defendants'] involvement is fairly traceable to Plaintiffs' injuries," i.e., whether Article III standing exists. Pls.' Mem. [122] at 6. In short, Plaintiffs clearly seek discovery of the standing issue, and the Court will take that part of the motion under advisement.

Plaintiffs' reply brief starts the same way, arguing that "Defendants' assorted Article III standing arguments—which are meritless—necessitated this motions practice." Reply [144] at 1. But unlike their motion and opening brief, the reply brief mentions personal jurisdiction, though in parenthetical. In a paragraph otherwise addressing Article III standing, Plaintiffs say this: "To be sure, if the documents Plaintiffs have challenged supported Defendants' collective Article III (or personal jurisdiction) defense, they would not so fervently oppose the limited discovery Plaintiffs are seeking." *Id.* at 1.

As an initial matter, the Court doubts that Plaintiffs seek discovery to address personal jurisdiction, and it addresses the point only to be thorough. If they do seek that discovery, then neither the motion nor the initial brief gives Defendants notice of that request. *See* Fitzgerald Mem. [133] at 1 (noting that Plaintiffs' motion "for limited discovery is narrowly focused on the Article III standing inquiry"). For this reason, it is the practice of "the district courts to refuse to consider arguments raised for the first time in reply briefs." *Gillaspy v. Dallas Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) (citation omitted).

Beyond that, even if Plaintiffs did intend to seek personal-jurisdiction discovery, they "must make clear which specific facts [they] expect[ ] discovery to find." *Johnson*, 21 F.4th at 326. They haven't done that. Thus, they have not shown "how the discovery [they] requested would change the jurisdictional determination." *Monkton Ins. Servs., v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014). The Court denies Plaintiffs' discovery motion to the extent that it may seek personal-jurisdiction discovery.[2]

[2] The Court also denies the motion because Defendants' personal-jurisdiction arguments are based on legal rather than factual disputes. Defendants argue that if a tort was committed as alleged, it happened in Louisiana. *See, e.g.*, Hessling Mem. [113] at 7 ("Not a single defendant, including Hessling, is alleged to have conspired in Mississippi, and Fey's termination occurred in Louisiana.").

IV. Strothoff Motion to Dismiss [108]

As a reminder, Strothoff is the general counsel of Fey's former employer, AJG. Am. Compl. [56] ¶ 6. On May 21, 2025, he emailed Fey threatening to terminate his employment if he did not cease operating Fey Consulting. *Id.* ¶ 22. Fey refused, and AJG terminated his employment on May 23, 2025, *id.* ¶ 26, just 22 days after Fey testified in *Starr I*, *id.* ¶ 13.

Strothoff now contends that Plaintiffs' Amended Complaint fails to state a claim against him; he does not contest personal jurisdiction.

A. Standard

When considering a motion under Rule 12(b)(6), the "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam)). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To overcome a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555 (citations and footnote omitted). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

Finally, "a plaintiff's failure to meet the specific pleading requirements should not automatically or inflexib[ly] result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citation omitted). Thus, "[a]lthough a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Id.* (citation omitted).

B. Analysis

In broad terms, Strothoff says Plaintiffs' federal civil-rights claim and five state-law claims all fail because there are no facts plausibly showing he retaliated against Fey for testifying against Starr. The Court will separately consider the federal claim and then collectively review the state-law claims.

1. Section 1985 Claim

Plaintiffs first allege that Defendants violated § 1985(2) by retaliating against him for testifying against Starr. Am. Compl. [56] ¶¶ 32–48. As noted above, § 1985(2) makes it unlawful for "two or more persons . . . [to] conspire . . . to injure . . . [a] witness in his person or property on account of his having . . . testified." This provision "creates a private civil remedy." *Montoya v. FedEx Ground Packaging Sys., Inc.*, 614 F.3d 145, 149 (5th Cir. 2010).

Strothoff attacks causation, arguing that "[t]he 'on account of' requirement is completely missing in this case." Strothoff Mem. [109] at 9. As to that requirement, § 1985(2) "does not create liability for every adverse action taken against a witness after the witness testifies in a federal case." *Kinney v. Weaver*, 367 F.3d 337, 355 (5th Cir. 2004) (en banc). Rather, "the conspirator must threaten or injure the witness 'on account of his having so attended or testified'—that is, because of, and by reason of, a person's participation as a witness." *Id.* (citing

*Webster's Third New International Dictionary* 13 (1963)). Thus, plaintiffs must show "a nexus between the alleged conspiracy and a proceeding in federal court." *Mitchell v. Johnson*, No. 07-40996, 2008 WL 3244283, at *4 (5th Cir. Aug. 8, 2008).

According to Strothoff, no nexus exists, and he supports that argument with his May 21st email to Fey:

> We have not previously connected but I manage legal affairs for our US retail brokerage operations. As I believe you have been informed, Gallagher management considers your activities in operating an outside consulting business to be a direct violation of your employment agreement, Gallagher policy and Gallagher's business interests. I do not consider our position on these violations to be open for debate at this time. Gallagher does not afford exceptions to our prohibition on outside employment except in extremely rare circumstances. With respect to your operation of a separate consulting business outside of Gallagher, we will not approve an exception in this case. As you may know, violations of your employment agreement and Gallagher policy can result in disciplinary actions by Gallagher, including termination of your employment. I have been informed that you do not intend to discontinue your outside consulting business even in light of these circumstances. Please confirm whether my interpretation of your intention to continue to operate your consulting business is accurate.

Strothoff Email [56-2] at 2. Fey responded to this email, confirming his desire to continue his consulting work, *id.* at 1, and AJG terminated him for it, Am. Compl. [56] ¶ 24.

Based on this email, Strothoff makes two points. First, he asks the Court to find—as a matter of law—that "Mr. Fey's termination was justifiable because he made the choice to continue his side business, effectively in competition with his employer's business interests, after explicit warning of the same." Strothoff Mem. [109] at 12. Second, he says no nexus existed because "nothing [therein] alleges [Fey] was going to be terminated because he provided any testimony against Starr." Strothoff Mem. [109] at 3 n.3 (citing Strothoff Email [56-2]). Strothoff similarly notes "the lack of any other allegation that Mr. Fey *was advised* he would be terminated because of testimony he gave." *Id.* at 7 (emphasis added).

To begin with, Strothoff asks the Court to find that Defendants did not retaliate against Fey based on Strothoff's construction of this single exhibit to the Complaint. But as noted, the "court accepts '*all* well-pleaded facts as true, viewing them *in the light most favorable to the plaintiff*.'" *Martin K. Eby Constr. Co*., 369 F.3d at 467 (emphasis added). Moreover, Strothoff has offered no authority suggesting that a defendant faces liability for retaliation only when he expressly tells the plaintiff he intends to retaliate. In other words, Strothoff fails to account for circumstantial evidence or the possibility that the email was pretext for retaliation. *See Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1126 (10th Cir. 1994) (noting that plaintiffs may prove § 1985(2) claims through direct or circumstantial evidence); *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1295 (5th Cir. 1994) (holding that plaintiff failed to establish pretext in § 1985(2) case).

Fey's case is circumstantial. Starting with the email, Strothoff omits this statement when quoting the message in his brief: "Gallagher does not afford exceptions to our prohibition on outside employment except in extremely rare circumstances," and "we will not approve an exception in this case." Strothoff Email [56-2] at 2. Thus, AJG's policy is not immutable. Indeed, Fey alleges that he "had operated [Fey Consulting] with the knowledge, approval and consent of AJG and its predecessor entities since 2007." Am. Compl. [56] ¶ 21.

So, what changed in May 2025? Fey testified against Starr. Fey summarizes what happened next in this chart:

| Date | Event | Citation |
|---|---|---|
| **May 1, 2025** | Mr. Fey testifies adversely to Starr in *Starr I.* | Am. Compl., ¶ 13 |
| **May 2, 2025** | The jury renders a verdict adverse to Starr in *Starr I.* | Am. Compl., ¶ 14 |
| **May 1-8, 2025** | Mr. Fitzgerald is copied on correspondence regarding "Fey's trial testimony" in *Starr I.* Starr has withheld this correspondence under claim of privilege. | Starr Priv. Log, ECF No. 121-1 |
| **May 13, 2025** | Mr. Fitzgerald sends an email to Mr. Hessling regarding Mr. Fey's testimony in *Starr I.* | ECF No. 56-1 |
| **May 15, 2025** | Mr. Strothoff, Mr. Doyle, and Mr. Hessling exchange an email regarding Mr. Fey, which Gallagher Bassett has withheld under claim of privilege that cannot possibly apply, *see* fn.3, *infra*. | Gallagher Bassett Priv. Log, ECF No. 117-1 (Page 3 of 7) |
| **May 16, 2025** | Mr. Strothoff contacted Mr. Fey's supervisors regarding his testimony in *Starr I*, read the riot act, and claimed Mr. Fey's testimony caused Starr to have to pay millions of dollars. | Am. Compl., ¶ 41 |
| **May 19, 2025** | Mr. Fey's supervisor told him a Starr employee had contacted Gallagher Bassett regarding his testimony in *Starr I.* | Am. Compl., ¶¶ 20-21 |
| **May 23, 2025** | Mr. Fey is terminated. | Am. Compl. ¶ 24 |
| **May 23, 2025** | The same day Mr. Fey is terminated, Thomas Olsen, an executive at Starr, emails Patrick Sweeney, Starr's Rule 30(b)(6) designee in *Starr I.* Mr. Olsen's email simply states: "FYI. The expert is a Louis Fey." | STARR-00176, ECF No. 121-2 |
| **On or about May 28, 2025**[1] | Mr. Hessling calls Mr. Fitzgerald and tells him: "wanted to let you know Mr. Fey is no longer with the Gallagher organization and I thought you might be interested in knowing that." Then he asked Mr. Fitzgerald for a business favor. | Voicemail [STARR-00177], ECF 121-3 |

Pls.' Mem. [130] at 3–4.

Viewing the non-conclusory facts in the light most favorable to Fey—including the minimal time between his testimony and termination—Fey has plausibly pleaded a concerted effort to retaliate against him for testifying against Starr. Even Strothoff's email could be viewed to support that intent because he informed Fey that his outside "activities" conflicted with "Gallagher's business interests." Strothoff Email [56-2] at 2.

In sum, Strothoff says this is a simple employment dispute and that Fey chose termination. A jury might agree. But Plaintiffs could show Defendants retaliated by making him give up either his job or his consulting firm. *See* Strothoff Email [56-2] at 2. That Fey chose the former does not make a retaliation claim implausible. Nor must he show that Defendants told him they intended to retaliate—i.e., offer direct evidence. *See Enplanar, Inc.*, 11 F.3d at 1295. And any disputes about the intent behind the email goes to the merits, which "will be determined beyond the pleading stage as this case advances to summary judgment (if sought) or trial." *Jackson v. Duff*, 161 F.4th 343, 349 (5th Cir. 2025). Strothoff's motion to dismiss the § 1985(2) claim is denied.

2. State-Law Claims

Plaintiffs assert state-law claims for tortious interference with business relationships, civil conspiracy, intentional or negligent infliction of emotional distress, aiding and abetting, and punitive damages.

***Common arguments.*** As an initial point, Strothoff presses the same causation argument he asserted for the § 1985(2) claim. For example, he says his May email to Fey threatening termination forecloses "all . . . claims" because "nothing [therein] alleges [Fey] was going to be terminated because he provided any testimony against Starr." Strothoff Mem. [109] at 4 n.3 (citing Strothoff Email [56-2]). The Court has rejected that argument.

Most of Strothoff's other state-law arguments flow from this causation theory. For example, he says the tortious-interference claim fails because he didn't intend to "damage Mr. Fey or Fey Consulting," nor was the decision "unlawful or without right or justifiable cause." Strothoff Mem. [109] at 11. That's plausibly disputed. The causation issue also impacts Strothoff's claim that he acted within the course and scope of employment because the parties dispute whether his acts were illegal and therefore beyond that scope. Pls.' Mem. [130] at 14, 15.

As noted when addressing the federal civil-rights claim, Plaintiffs have adequately pleaded circumstantial facts making causation plausible. The same is true for the state-law claims. At a minimum, they have pleaded '"enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co.*, 541 F.3d at 587 (quoting *Twombly*, 550 U.S. at 556).

Beyond that central argument and those that flow from it, Strothoff does offer a few additional points as to the specific state-law causes of action. Strothoff makes those arguments under Mississippi law, but the Court is not yet convinced that Mississippi law applies.

***Conflicts of law.*** "When deciding matters of state law, a federal court must apply the choice-of-law rules of the state in which it sits." *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 452 n.2 (5th Cir. 2001) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). "In Mississippi, the forum state here, a conflict of law analysis is only undertaken if the substantive law of the two potential states . . . actually conflict." *Jordan v. Evanston Ins.*, 23 F.4th 555, 560 (5th Cir. 2022) (citing *Smith v. Church Mut. Ins.*, 254 So. 3d 57, 65 (Miss. 2018)). Neither party addresses this.

Determining whether Louisiana law conflicts with Mississippi common law on these five causes of action (under these facts) is not something the Court should consider without the parties' input. Put simply, Louisiana law is often different, so the parties will need to address whether each cause of action presents a conflict.

If there is a conflict, then Mississippi applies "the 'center of gravity' doctrine of the Restatement." *Zurich Am. Ins. v. Goodwin*, 920 So. 2d 427, 433 (Miss. 2006) (citing *Mitchell v. Craft*, 211 So. 2d 509, 510 (Miss. 1968)). Under that doctrine, "tort actions should be governed by the law of the state with the most significant relationship to the occurrence giving rise to the dispute and the parties." *Viener v. Casano*, 728 F. App'x 279, 282 (5th Cir. 2018) (citing *Zurich Am. Ins.*, 920 So. 2d at 433; RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971)).

> Contacts to be taken into account . . . to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.

*Viener*, 728 F. App'x at 282 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (1971)). "Each contact is 'to be evaluated according to [its] relative importance with respect to the particular issue." *Id.* There is more to the test. *See id*. But considering these contacts, there is at least an argument that the center of gravity rests in Louisiana. The Court would need briefing before tackling that analysis.

Thus, the Court makes no ruling on the applicable law and will wait for further briefing. At this point though, the Court denies any arguments requiring the Court to find—as a matter of law—that Strothoff fired Fey for just cause and not in retaliation for his testimony. Beyond that,

the Court denies the motion as to the other state-law claims without prejudice. Strothoff's motion to dismiss [108] is denied.

## V. Conclusion

The Court has considered all arguments. Any argument not specifically addressed would not affect the outcome. For the reasons stated above, the Court denies Defendant Matt Strothoff's Motion to Dismiss [108]. The Court grants the motions filed by Fitzgerald [95], Hessling [112], and GBS [115]. Plaintiffs' motion for discovery [121] is denied in part to the extent that they may seek discovery related to personal jurisdiction and is otherwise taken under advisement. The stay of discovery will remain in place until the Court decides Starr's motion to dismiss [110].

**SO ORDERED AND ADJUDGED** this the 22nd day of September, 2026.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE